**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

SEAN PRITCHETT, A. STOVER,  PAUL
BURGOS, and J. PATTERSON,

                                Plaintiffs,

     v.                                        No. 03-CV-378
                                                   (GLS/DRH)

SUPERINTENDENT PORTOUNDO; NEVILLE
ANDREWS; and P. HARRAN, Head of Programs,

                                Defendants.

---

**DAVID R. HOMER
U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                        **OF COUNSEL:**

SEAN PRITCHETT
Plaintiff Pro Se
No. 97-A-4080
Attica Correctional Facility
Post Office Box 149
Attica, New York 14011

A. STOVER
Plaintiff Pro Se
No. 93-A-3122
Wende Correctional Facility
Post Office Box 1187
Alden, New York 14004

PAUL BURGOS
Plaintiff Pro Se
No. 98-A-5848
Sullivan Correctional Facility
Post Office Box 116
Fallsburg, New York 12733-0116

J. PATTERSON
Plaintiff Pro Se

No. 77-A-4549
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411

| | |
|---|---|
| HON. ELIOT SPITZER<br>New York State Attorney General<br>Attorney for Defendants<br>Office of the Attorney General<br>The Capitol<br>Albany, New York 12224-0341 | MICHAEL G. McCARTIN, ESQ.<br>Assistant Attorney General |

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiffs pro se Sean Pritchett ("Pritchett"), A. Stover ("Stover"), Paul Burgos ("Burgos"), and J. Patterson ("Patterson"), all inmates in the custody of the New York State Department of Correctional Services (DOCS), bring this action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. against three DOCS employees. Am. Compl. (Docket No. 18). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 52. Plaintiffs oppose the motion. Docket No. 54. For the following reasons, it is recommended that defendants' motion be granted.

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2

## I. Background

The following facts are presented in the light most favorable to plaintiffs as the non-moving parties on this motion for summary judgment. See Ertman v. United States, 165 F.3d 204, 206 (2d Cir. 1999).

At all relevant times, plaintiffs, all of whom utilized wheelchairs, were incarcerated at Shawangunk Correctional Facility ("Shawangunk"). From September 1999 to May 2002, Pritchett was assigned to one program for which he received pay at a rate of approximately 7.5¢ per hour for approximately three hours per day.  Tr. of Pritchett Dep. (Docket No. 52, Ex. 6, Ex. A) at 29-32, 44-50; Am. Compl. at 9 (unnumbered).[2] On May 29, 2002, Pritchett filed a grievance contending that he was entitled to a second program like non-disabled inmates which would pay him at a comparable hourly rate and requesting that he be awarded back pay for this second program.  Am. Compl. at 9.  This grievance was denied as untimely, but on appeal, Pritchett was awarded back pay for a second program in the amount of $146.03. Id.; Pritchett Dep. at 44-54.  Pritchett filed no grievance over the amount awarded.

Stover also was assigned to only one program which took place in the morning and paid him approximately 10-17.5¢ per hour. Tr. of Stover Dep. (Docket No. 52, Ex. 6, Ex. B) at 24; Horam Decl. (Docket No. 52, Ex. 1) at 6; Am. Compl. at 10. On May 29, 2002, Stover filed a grievance requesting to be awarded back pay from 1996 until May 2002 for a second program that he alleged he was denied.  Am. Compl.  The grievance was initially denied as

---

[2]Under Fed. R. Civ. P. 56(e), the non-moving party must offer evidence in sworn affidavits to oppose a properly supported motion for summary judgment.  A verified complaint meets this requirement.  See Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).  The amended complaint here was verified by all four plaintiffs and will, therefore, be considered on this motion.

3

untimely, but on appeal, Stover was awarded back pay in the amount of $255.15. Stover Dep. at 34. Stover then filed a second grievance complaining that the amount of back pay that he was awarded was not calculated properly and was awarded an additional amount of $144.98, for a total of $400.13. Id. at 36.

Burgos filed a grievance in August 2002 likewise requesting to be paid back pay for a second program that he alleged he was denied. Am. Compl. at 11. Burgos was awarded $28.13 in back pay. Tr. of Burgos Dep. (Docket No. 52, Ex. ^, Ex. C) at 7-8. Burgos alleges that he filed a second grievance disputing the amount awarded. Id. at 11. However, DOCS has no record of any such second grievance, McCartin Decl. (Docket No. 52, Ex. 6) at ¶ 6 & Ex. F, and Burgos never produced evidence of any second grievance although requested to do so by defendants. Burgos Dep. at 32-34.

Similarly, Patterson filed a grievance in August 2002 requesting back pay for a second program that he alleged he was denied and was administratively awarded $268.02 in back pay. Tr. of Patterson Dep. (Docket No. 52, Ex. 6, Ex. D) at 39. Patterson did not file a grievance challenging the amount of the award. Id. at 40-41.

This action followed.

## II. Discussion

### A. Summary Judgment Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law, and do not include irrelevant or unnecessary facts. Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must then set forth facts showing that there is a genuine issue for trial. They must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs., 122 F.3d 1219, 1223 (2d Cir. 1994). Additionally, pro se litigants should generally be afforded "special solicitude" regarding motions for summary judgment. Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).[3]

---

[3] Although entitled to such solicitude, Pritchett has some ligation experience, havein filed at least eight other federal actions since 1996. See U.S. Party/Case Index (visited July 21, 2005) <http://pacer.uspci.uscourts.gov/cgi-bin/ dquery.pl>. The present action appears to be the only action filed by Stover, Burgos, and Patterson.

5

## B. Exhaustion of Administrative Remedies

Defendants contend that plaintiffs failed to exhaust administrative remedies regarding their claims that the amount of back pay was miscalculated. The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, -803(d), 110 Stat. 1321-66, -71 (1996), subjects suits concerning prison conditions brought under federal law to certain prerequisites. Specifically, the PLRA dictates that a prisoner confined to any jail, prison, or correctional facility must exhaust all available administrative remedies prior to bringing any suit concerning prison life, be it in general or concerning a particular episode. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002). Administrative remedies include all appellate remedies provided within the system. Fletcher v. Haase, No. 99 CIV. 9549(GEL), 2002 WL 313799, at *1 (S.D.N.Y. Feb. 27, 2002).

A three part inquiry is appropriate in cases where a prisoner plausibly seeks to counter a contention that they have not exhausted available administrative remedies under §1997e(a). Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). First, a court must determine whether the administrative remedies were actually "available" to the petitioner. Id. (citing Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004)). "Available" means more than the mere presence of a grievance system but also that the system is functionally available to the prisoner. Hemphill, 380 F.3d at 686, 687. That test is objective so that a "similarly situated individual of ordinary firmness" would have deemed it available. Id. at 688 (citing Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).

The second part of the inquiry requires a court to ask whether the defendant's own actions inhibited exhaustion so that he or she is estopped from raising it as a defense.

Hemphill, 380 F.3d at 686 (citing Ziemba v. Wezner, 336 F.3d 161,163 (2d Cir. 2004)). Finally, if the administrative remedies were available and the defendant is not estopped, a court should also consider whether any "special circumstances" were plausibly alleged to justify the petitioner's failure to comply with the administrative requirements. Hemphill, 380 F.3d at 686; Giano v. Goord , 380 F.3d 670 (2d Cir. 2004) (citing Berry v. Kerik, 336 F.3d 85, 87-88 (2d Cir. 2004)).

DOCS has established a grievance process which includes a three-stage review and appeal. See N.Y. Correct. Law § 139 (McKinney 2003); N.Y. Comp. Codes R. & Regs. tit.7, § 701.1-.16 (2005). When an inmate files a grievance, it is investigated and reviewed by an Inmate Grievance Resolution Committee ("IGRC"). If the grievance cannot be resolved informally, a hearing is held. The IGRC decision may be appealed to the Superintendent of the facility. Finally, an inmate may appeal the Superintendent's decision to the Central Office Review Committee ("CORC"). N.Y. Comp. Codes R. & Regs. tit.7, § 701.7(a) (2005).

Each plaintiff here filed a grievance complaining that they were entitled to a second program and requesting back pay for the second program. All four plaintiffs ultimately prevailed on their grievances and were awarded back pay. Only Stover filed a second grievance concerning the calculation of the back pay awarded,[4] but when the IGRC increased the amount at the first stage of the grievance, Stover pursued the grievance no further. Therefore, the question presented here is whether, having received relief in the

---

[4]Although Burgos contends that he filed a second grievance, no evidence exists to support that contention or to show that he exhausted his appeals of that frievance. See section I supra.

7

grievance process and not having exhausted their administrative remedies as to that relief, plaintiffs have satisfied the requirements of § 1997e(a).

The answer is that they have not. The exhaustion requirement of § 1997e(a) serves, inter alia, to permit prison authorities in the first instance to address claimed deprivations, as was done for each plaintiff here on their grievances asserting entitlement to back pay. See Porter, 531 U.S. at 524-25 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). As to the amount of back pay awarded, however, plaintiffs' failure to exhaust precluded such initial review by prison authorities. Plaintiffs have thus failed to exhaust their administrative remedies as to any claim made regarding a disputed amount of back pay. Plaintiffs do not demonstrate how they otherwise believe that the grievance process was otherwise available to them or that other special circumstances justified their failure to grieve this issue.

Therefore, it is recommended as to the claims of each plaintiff that defendants' motion be granted.

### C. Program Assignment

Defendants also contend that to the extent that plaintiffs are asserting a violation of their constitutional rights to participate in a second program, this claim must fail.

Inmates are not entitled to any particular housing status or that programs will be available or provided. Moore v. Kennedy, No. 1996 WL 452279, at *1 (S.D.N.Y. Aug. 8,

1996). In addition, inmates do not have a protected liberty interest in their job assignments. Gill v. Mooney, 824 F. 2d 192, 194 (2d Cir. 1987). Therefore, plaintiffs do not have due process claims based on the assertion that they were entitled to two programs but were only allowed to participate in one. To the extent that plaintiffs assert a due process claim, therefore, the amended complaint fails to state a claim cognizable under § 1983.

It appears that the gravamen of plaintiffs' claims allege discrimination based on their disabilities, not denial of a claimed constitutional right to a second program. However, it is recommended that defendants' motion be granted as to any constitutional claims that plaintiffs were deprived of a claimed right to a second program.

### D. ADA

#### 1. Individual Capacity

Plaintiffs seek recovery against all defendants under the ADA in both their individual and official capacities. Defendants correctly contend that individual defendants cannot be held liable under the ADA. Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Hucks v. Artuz, No. 99-CV-10420, 2001 WL 210238, at *6 (S.D.N.Y. Feb. 27, 2001). Therefore, it is recommended in the alternative that defendants' motion be granted as to each defendant in his individual capacity on plaintiffs' ADA claims.

#### 2. Official Capacities

Defendants contend that they are entitled to sovereign immunity and thus cannot be sued in their official capacities.

9

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100.

A suit brought against a person in his or her official capacity must be treated as a suit against the entity represented by that person, provided that the public entity received notice and an opportunity to respond. Brandon v. Holt, 469 U.S. 464, 471-72 (1985). In an official capacity action, a government entity is liable only when the entity itself is the "moving force" behind the alleged deprivation. Kentucky v. Graham, 473 U.S. 159, 166 (1985). In other words, "the entity's 'policy or custom' must have played a part in the violation of federal law" for liability to attach. Id. at 166 (citations omitted); Hafer v. Melo, 502 U.S. 21, 25 (1991).

It has recently been held in this circuit that a plaintiff cannot seek monetary damages against a state or an individual sued in his or her official capacity unless "the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." Garcia, 280 F.3d at 112. Plaintiffs fail to allege or demonstrate that their allegation of a violation of the ADA was motivated by discriminatory animus or ill will.

Accordingly, it is recommended in the alternative that defendants' motion for summary judgment on this ground be granted.

### 3.  Merits

Title II of the ADA applies to state inmates. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998); Beckford v. Portuondo, 151 F. Supp. 2d 204, 220 (N.D.N.Y. 2001) (Kahn, J.). To state a claim under the ADA, an inmate must demonstrate that "(1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) [the facility that] provides the service, program or activity is a public entity." Clarkson v. Coughlin, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995); 42 U.S.C. § 12132.

Here, it is undisputed that plaintiffs are qualified individuals with disabilities. The amended complaint alleges that the plaintiffs were deprived of a second program which other inmates without disabilities were allowed. Defendants, however, offer proof that plaintiffs were not denied a second program based on their disability. The policy at Shawangunk was that while non-handicapped inmates were required to participate in two programs, the participation of handicapped inmates in a second program was optional. Horan Decl. at ¶ 3. Plaintiffs were not denied access to these programs, which were available to them at their request. At least two other disabled inmates were assigned two programs. Andrews Decl. (Docket No. 52, Ex. 3) at ¶5 & Ex. 2.

11

In addition, all plaintiffs were assigned second programs on May 27, 2002 prior to the filing of the grievances in this matter. Horan Decl. at ¶ 4. Prior to this time, Patterson refused a second program, Stover was removed from a second program at his own request or for disciplinary reasons, and Burgos was also removed from a second program for disciplinary reasons. Horan Decl. at ¶¶ 6-8 & Ex. 1; Burgos Dep. at 30-32.

Therefore, it is recommended in the alternative that defendants' motion on this ground be granted.

### E. Personal Involvement

Defendants also contend that plaintiffs have failed to establish the personal involvement of defendant Portuondo. To establish liability under § 1983, a plaintiff must demonstrate that the alleged deprivation of federal rights was committed by a person acting under color of state law. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48-49 (1988). A prerequisite to establishing this liability is the personal involvement of the defendant in the alleged deprivation. Generally, liability cannot be imposed on a state official for damages under § 1983 solely by the fact that he is a supervisor because respondeat superior liability does not exist under § 1983. Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). However, a defendant supervisor is personally involved if he or she has (1) directly participated in the infraction, (2) failed to remedy the wrong after learning of the violation, (3) created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue, or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

12

Here, the sole allegation as to Portuondo's involvement is that Portuondo learned of the violation through the Pritchett and Stover grievances and failed to correct the situation. Am. Compl. at 8. While Portuondo received the grievance, it was not denied on the merits but was denied on timeliness grounds. Portuondo's response did not show that he was aware of the allegations contained therein. Burgos and Patterson did not appeal their grievances to Portuondo. Plaintiffs fail to demonstrate that Portuondo substantially reviewed each plaintiff's complain or how Portuondo was otherwise personally involved.

Therefore, in the alternative defendants' motion for summary judgment on this ground should be granted as to defendant Portundo.

### E. Qualified Immunity

Finally, defendants contend that they are entitled to qualified immunity. Qualified immunity generally protects government officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. 2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of plaintiffs' allegations as true, they have not shown a constitutional violation.

13

Therefore, in the alternative defendants' motion for summary judgment on this ground should be granted.

### III.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Docket No. 52) be **GRANTED** as to all claims and all defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: September 9, 2005
Albany, New York

David R. Homer
United States Magistrate Judge